[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15071
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 24, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-00397-CV-W-M

EUGENE L. CLECKLER,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(January 24, 2011)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Former federal prisoner Eugene Cleckler appeals <u>pro se</u> the district court's

denial of his 28 U.S.C. § 2255 motion to vacate his sentence due to his trial counsel's ineffective assistance. After review, we affirm.

## I. BACKGROUND

### A.    Criminal Trial and Direct Appeal

In 2006, Cleckler and his business-partner son were charged with conspiracy to defraud the United States, in violation of 18 U.S.C. §§ 2(b) and 371 (Count 1), and corrupt or forcible interference with the administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a) and 18 U.S.C. § 2 (Count 2). At trial, the government presented the testimony of two Internal Revenue Service ("IRS") agents, Cleckler's former business counsel, Cleckler's business accountant and several employees. These witnesses described fraudulent accounting practices, including altering invoices and creating false invoices to reflect higher expenses and reduce the taxable income for Cleckler's business. Cleckler submitted the fraudulent invoices to the IRS during an audit of his business's 1994 and 1995 tax returns.

Cleckler testified in his defense. Cleckler denied having any involvement in the fraudulent activity. Cleckler maintained that his former business counsel and an employee created the false documents without his knowledge. The jury convicted Cleckler on both counts, and acquitted his son on both counts.

At sentencing, over Cleckler's objection, the district court imposed a two-level obstruction of justice enhancement, pursuant to U.S.S.G. § 3C1.1. The district court found that Cleckler willfully gave perjured testimony during the trial, and cited several instances in which Cleckler's trial testimony conflicted with that of the government's witnesses.

The district court calculated Cleckler's total offense level as 20 and his criminal history category as I, yielding an advisory guidelines range of 33 to 41 months' imprisonment. The court imposed a 33-month sentence on Count 1 and a concurrent 24-month sentence on Count 2, followed by 3 years of supervised release. On August 14, 2007, Cleckler began serving his sentence.

On direct appeal, Cleckler challenged, inter alia, the obstruction of justice enhancement. This Court affirmed. See United States v. Cleckler, 265 F. App'x 850 (11th Cir. 2008).

**B.    Section 2255 Motion**

In May 2008, Cleckler filed this § 2255 motion raising several ineffective assistance of trial counsel claims. Relevant to this appeal, Cleckler argued that his trial counsel failed to advise him of the risks of testifying at trial and that the decision whether to testify belonged to Cleckler. Cleckler contended that, had he been informed of the risks, he would not have testified and, consequently, would

3

not have been subject to the obstruction of justice enhancement. Cleckler asked that his sentence be vacated and that he be resentenced without the obstruction of justice enhancement.

The district court issued an order directing Ronald Brunson, Cleckler's trial counsel, to respond to Cleckler's allegations. Brunson submitted an affidavit averring, among other things, that he: (1) had "frequently discussed the perils of testifying" with Cleckler, but that Cleckler insisted on testifying to "tell his side of the story"; (2) arranged a pretrial mock cross-examination "in an effort to identify the risks" and advised Cleckler that "the case would hinge on his credibility before the jury"; (3) "advised Cleckler by letter of the guidelines enhancement for testifying falsely"; and (4) discussed the details of this letter with Cleckler in a phone conversation and at a November 13 pre-trial conference.

Brunson attached a copy of the letter, which was unsigned and dated November 6, 2006. Brunson's letter discussed a plea offer and stated, "A trial conviction would result in a custody sentence of about 36 months and if the judge found that you lied during your testimony at trial (which is a common finding when the jury convicts contrary to the defendant's testimony), up to 46 months custody."

In response, Cleckler submitted his affidavit averring that: (1) Brunson never

4

discussed with him the risks of testifying and that he, Cleckler, never insisted on testifying; (2) Brunson "never showed [him] anything in writing about a possible increase in [his] sentence if [he] was convicted after testifying"; (3) the mock cross-examination was to prepare Cleckler to testify, not to warn Cleckler of the risks of testifying; (4) Brunson never discussed the details of the letter attached to Brunson's affidavit; (5) Brunson consistently told Cleckler he had to testify because the case would turn on Cleckler's word against the word of his employees; and (6) Cleckler would not have testified if he had been told that the decision was his to make and had known that his sentence could be increased if he was found guilty after testifying.

## C.    Evidentiary Hearing

On March 23, 2009, a magistrate judge held an evidentiary hearing. Cleckler testified consistent with his affidavit.[1]  According to Cleckler, Brunson never told him he had a Fifth Amendment right to remain silent.  Cleckler believed it was not his decision to make because Brunson directed him to testify.  Brunson never discussed with Cleckler the risks associated with testifying, including that his sentence might be increased based on his testimony.  Cleckler claimed to have

---

[1]Although Cleckler filed his § 2255 motion pro se, he retained counsel to represent him at the evidentiary hearing and through the conclusion of the district court proceedings.  Cleckler is pro se in this appeal.

seen the letter attached to Brunson's affidavit for the first time in July 2008, during the § 2255 proceedings.

Brunson, on the other hand, testified that he had numerous pretrial discussions with Cleckler about the possibility of his testifying at trial. Brunson could not recall a specific occasion in which he had discussed Cleckler's right to not testify, but that they always talked in the context of "if [Cleckler] were to testify" and that the choice "was such an elementary thing in [their] conversations." Brunson explained that he and Cleckler planned to decide whether Cleckler should testify after the government rested its case. After the government rested, Brunson and Cleckler agreed that it was important for Cleckler to testify to repudiate the testimony of the government's witnesses that Cleckler was involved in the crime.

As for the sentencing enhancement, Brunson said he sent Cleckler the November 6, 2006 letter and had a follow-up conversation with Cleckler in which Cleckler advised he had received the letter. Brunson also had a meeting with Cleckler to discuss the substance of the letter. Brunson explained that he could not find a signed copy of the letter in his files and had printed out a copy of the letter and attached it to his affidavit. Brunson admitted that he did not discuss specifically the obstruction of justice enhancement any more than was outlined in

6

the letter.

**B.    Report and Recommendation**

The magistrate judge entered a report and recommendation ("R&R"), recommending that Cleckler's motion be dismissed on all grounds. Regarding Brunson's alleged failure to advise Cleckler of the risks of testifying, the R&R concluded that Cleckler had not shown either deficient performance or prejudice. The R&R declined to make a credibility determination regarding Brunson's disputed testimony that he warned Cleckler of the potential obstruction of justice enhancement. Instead, the R&R concluded that a defense attorney is not constitutionally required to warn a defendant that testifying untruthfully could lead to a sentencing enhancement for obstruction of justice, especially where the defendant has taken the oath before testifying. As to prejudice, the R&R noted that Cleckler's 33-month total sentence fell within the 27-to-33-month advisory guidelines range that would have applied even without the obstruction of justice enhancement, and Cleckler had not shown a reasonable probability that, even if warned of the enhancement, his sentence would have been different.

Over Cleckler's objection, the district court adopted the R&R and denied Cleckler's § 2255 motion. In so doing, the district court noted that Cleckler's claim that his sentence would have been shorter without the obstruction of justice

enhancement was speculation given the advisory nature of the guidelines. The district court denied Cleckler's subsequent motion to alter or amend the judgment, filed pursuant to Federal Rule of Civil Procedure 59(e).

On October 5, 2009, Cleckler filed a notice of appeal. This Court granted a certificate of appealability on the issue of "[w]hether the district court erred by denying Cleckler's claim that his attorney failed to advise him of the consequences of testifying on his own behalf at trial." On December 31, 2009, while this appeal was pending, Cleckler completed his sentence and began his supervised release term, which will expire on December 31, 2012.

## II. DISCUSSION

### A. Mootness

As a threshold matter, the government argues that Cleckler's appeal is moot because Cleckler has completed his term of imprisonment. We disagree.[2]

"The doctrine of mootness derives directly from the case or controversy limitation [of Article III]." Soliman v. United States ex rel. INS, 296 F.3d 1237, 1242 (11th Cir. 2002). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Id. (brackets omitted). Thus, if an event occurring after the filing of the lawsuit deprives "the

---

[2]Whether a case is moot is a question of law we review de novo. Mattern v. Sec'y for Dep't of Corrs., 494 F.3d 1282, 1285 (11th Cir. 2007).

court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." Id. (quotation marks omitted).

Ordinarily, if a habeas petitioner attacks only his sentence, and the sentence expires before final adjudication of the habeas petition, the case is moot. Lane v. Williams, 455 U.S. 624, 631, 102 S. Ct. 1322, 1327 (1982) (involving a due process claim that became moot when the petitioner's supervised release term ended while an appeal to the Sixth Circuit was pending). However, the case is not moot if the petitioner proves that "collateral consequences" of the expired sentence remain. Spencer v. Kemna, 523 U.S. 1, 7-8, 14-15, 118 S. Ct. 978, 983, 986-87 (1998) (concluding that petitioner did not prove collateral consequences by alleging that his expired parole-revocation term might affect future parole decisions or increase a future sentence); Mattern, 494 F.3d at 1285 (concluding that petitioner did prove collateral consequences where probation revocation and resulting sentence had been used to enhance a new sentence).

This Court has concluded that a former prisoner's challenge to his sentence is not moot while he is on supervised release. Dawson v. Scott, 50 F.3d 884, 886 n.2 (11th Cir. 1995). In Dawson, we rejected a mootness challenge to a 28 U.S.C. § 2241 habeas petition because the petitioner was "still serving his term of supervised release, which [was] part of his sentence and involve[d] some

9

restrictions upon his liberty," and because success on the merits of his habeas petition could alter his supervised release term. Id. Under Dawson, Cleckler's § 2255 claim is not moot because he is still serving his supervised release term and that term could change if he prevailed on appeal. See 18 U.S.C. § 3583(e)(1)(giving district court the discretion to terminate a supervised release term after the expiration of one year of supervised release).[3]

## B. Ineffective Assistance of Counsel

A criminal defendant has a fundamental right to testify on his own behalf at trial that cannot be waived by counsel. United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." Id. at 1533. The COA in this case limits our review to "Cleckler's claim that his attorney failed to advise him of the consequences of testifying on his own behalf at trial." To the extent Cleckler raised a separate claim based on his trial counsel's alleged failure to advise him that he could decide not to

---

[3]The government argues that we are no longer bound by Dawson after the Supreme Court's decision in United States v. Johnson, 529 U.S. 53, 120 S. Ct. 1114 (2000). We need not decide the import of Johnson because it does not address the issue of mootness and does not undermine Dawson's reasoning that a term of supervised release imposes restrictions on a defendant's liberty and can be altered following success on appeal.

testify, this claim is outside the scope of the COA, and we do not address it.  See

Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998).

A claim involving defense counsel's advice about the defendant's right to

testify is properly analyzed as a claim of ineffective assistance of counsel under

Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  Teague, 953 F.2d

at 1534.  Strickland's two-pronged test requires the defendant to show both

objectively unreasonable performance by counsel and resulting prejudice to the

defendant.  466 U.S. at 687, 104 S. Ct. at 2064.  If we determine that the defendant

fails to establish either the performance or prejudice prong, we need not address

the remaining prong.  Id. at 697, 104 S. Ct. at 2069.

Here, we need not address whether trial counsel's alleged failure to advise

Cleckler of the risk of an obstruction of justice enhancement constitutes deficient

performance because we conclude that Cleckler has not shown prejudice in any

event.  To establish prejudice, "[t]he defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  Id. at 694, 104 S. Ct. at 2068.

Cleckler's advisory guidelines range with the obstruction of justice

enhancement was 33 to 41 months' imprisonment.  Without the obstruction of

11

justice enhancement, the advisory guidelines range would have been 27 to 33 months' imprisonment. Thus, Cleckler's total 33-month sentence fell within both ranges. Cleckler points out that the sentencing court imposed a sentence at the bottom of the advisory guidelines range and argues that this suggests the court would have done so had his range been 27 to 33 months. This ignores that the R&R, which the district court adopted, noted that Cleckler's 33-month sentence fell within the advisory guidelines range even without the obstruction of justice enhancement and that the district court, in denying Cleckler's § 2255 motion, expressly noted that Cleckler's claim that his sentence would have been shorter was speculative.[4] Given the particular circumstances here, Cleckler's speculation is not enough to carry his burden to show a reasonable probability of a different sentence.

**AFFIRMED.**

---

[4]The judge that denied Cleckler's § 2255 motion was the judge who imposed the 33-month sentence.