[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------

Nos. 99-13347, 99-13944

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 16, 2001
THOMAS K. KAHN
CLERK

D. C. Docket No. 99-08565-CV-DTKH

LIONEL BEKIER,
In the matter of Jonathan Bekier, infant.

Plaintiff-Appellee,

versus

BETTINA SROUR BEKIER,
In the matter of Jonathan Bekier, infant,

Defendant-Appellant.

----------------------------------------------------------------
Appeals from the United States District Court
for the Southern District of Florida
----------------------------------------------------------------

**(April 16, 2001)**

Before EDMONDSON and MARCUS, Circuit Judges, and RESTANI*, Judge.

_____

*      Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

EDMONDSON, Circuit Judge:

Bettina Srour Bekier asks this court to determine whether a child born in France, removed to Israel by his father, and then removed to France and the United States by his mother should be returned to Israel with his father. The Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 19 I.L.M. 1501 codified at 42 U.S.C. § 11601 et seq, [hereinafter "Hague Convention"],would govern this inquiry.[1] But first we must be sure that we have a live case or controversy before us. Because we conclude that the case is moot, we dismiss the appeal and vacate the district court's judgment.

I.

Lionel Bekier and Bettina Srour Bekier married in France in 1990 and gave birth there to their only child, Jonathan. When the couple divorced in 1994, the French divorce decree awarded temporary physical custody to the father, visitation and lodging rights to the mother, and joint legal custody to both parents.

While the final custody determination was pending in France, Ms. Bekier

---

[1]The United States and Israel are both signatories to the Hague Convention. See Hague Conference on Private International Law: Report of the Second Special Commission Meeting to Review the Operation of the Hague Convention on the Civil Aspects of International Child Abduction, 33 I.L.M. 225, 225 (1994).

gave written permission for Mr. Bekier and the child to travel to Israel "to make their aliyah as temporary residents." Mr. Bekier and his son arrived in Israel in July 1994. Although Mr. Bekier's passport permitted entry only until November 1994, Mr. Bekier began procedures to qualify for permanent residency in Israel; and he registered Jonathan for kindergarten.

Ms. Bekier visited the father and child in Israel and agreed to postpone a French custody hearing. Mr. Bekier filed a claim for custody of Jonathan in the Rabbinical Court of Tel Aviv. The Israeli court issued a "No Exit Order" to prevent removal of Jonathan from Israel. The court also awarded custody to Mr. Bekier and granted Ms. Bekier visitation rights. Thus Mr. Bekier has permanent custody rights in Israel; the issue of permanent custody remains unresolved in France.

On 2 March 1995, Ms. Bekier and Jonathan left Israel for France, eventually relocating to New York and then South Florida. Mr. Bekier was unaware of Jonathan's location until 1999, when a private investigation service located Ms. Bekier and Jonathan.

In 1998, Mr. Bekier filed a petition under the Hague Convention in France. French authorities referred the petition to Israel, determining that Israel had proper jurisdiction over the petition. When Mr. Bekier finally learned that Jonathan was

in Florida, he -- in the Southern District of Florida -- filed a petition for return of the child under the Hague Convention and 42 U.S.C. § 11601.

The district court concluded that Jonathan had been wrongfully removed from his habitual residence of Israel and ordered that the child be given to Mr. Bekier for return to Israel. On 26 August 1999, the court issued a conditional stay, ordering the child to remain in Dade or Broward counties if Ms. Bekier filed an appeal within ten days. The stay also required Ms. Bekier to post a $100,000 bond. Ms. Bekier filed her notice of appeal within the ten-day limit, but she posted no bond. Sometime in mid-October, Mr. Bekier returned to Israel with his son, where they are currently residing.[2]

## II.

The Hague Convention determines which contracting state has jurisdiction to resolve the underlying custody dispute. The purposes of the Convention are "to

---

[2]Some confusion existed surrounding the temporary stay order. The stay had not been lifted when Mr. Bekier left the United States with Jonathan. But the district court later concluded that the permanent stay order would not go into effect until Ms. Bekier filed an appeal and posted the $100,000 bond and that Ms. Bekier's failure to pay the bond caused the temporary stay to expire after ten days. The district court concluded that Mr. Bekier was "free to leave after the ten (10) day period ended." That Mr. Bekier left without willfully violating a district court order is material.

secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1. But the Convention sets no guidelines or requirements for determining custody; that determination remains subject to the laws of the proper forum state as determined by the Convention. The Convention rests on the premise that each member state is adequately and equally capable of determining which state should resolve custody disputes.

### III.

Because we are a court of limited jurisdiction, we must first consider whether we have jurisdiction to review this appeal. A person seeking return of his child, under the Hague Convention, may petition in any court authorized to exercise jurisdiction "in the place where the child is located at the time the petition is filed." 42 U.S.C. § 11603(b); see also Lops v. Lops, 140 F.3d 927, 936 (11th Cir. 1998). The district court initially had jurisdiction over this dispute because, at the time Mr. Bekier filed his petition, Jonathan was located in the Southern District of Florida. But after the district court ordered the child to be returned to

5

Mr. Bekier, Mr. Bekier returned to Israel with his son. This exit raises the question of whether this case is moot.[3] We conclude that this case is moot.

A case is moot if no case or controversy exists for us to resolve: "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Reich v. Occupational Safety and Health Review Comm., 102 F.3d 1200, 1201 (11th Cir. 1997) (quoting Powell v. McCormack, 89 S. Ct. 1944, 1950-51 (1969)). We have no authority "to give opinions on moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [us]." Church of Scientology v. United States, 113 S. Ct. 447, 449 (1992)(internal citations and quotations omitted). If an event occurs during the pendency of an appeal "that makes it impossible for this court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed."[4] Id. at 449.

Applying these general principles of mootness, we turn to the facts of this

---

[3]Both parties argue that the appeal is not moot. Nonetheless, we must "consider issues of mootness sua sponte and, absent an applicable exception to the mootness doctrine, [we must] dismiss any appeal that no longer presents a viable case or controversy." Pacific Ins. Co. v. General Development Corp., 28 F.3d 1093, 1096 (11th Cir. 1994).

[4]Three exceptions to the mootness doctrine exist: (1) if the issue is capable of repetition, yet evades review; (2) if the appellant has taken all necessary steps to perfect the appeal and to preserve the status quo; and (3) if the district court's order will have possible collateral legal consequences. Wakefield v. Church of Scientology, 938 F.2d 1226, 1230 (11th Cir. 1991). Neither party argues that any of these exceptions apply, and we see no obvious application of any exception here.

case.  Mr. Bekier petitioned to the district court for the return of Jonathan to his alleged habitual residence in Israel.  The magistrate judge's Report and Recommendation (R&R) -- applying the Hague Convention -- recommended that the district court grant Mr. Bekier's petition for return of the child to Israel.  The district court "adopted, affirmed, and implemented" the R&R in its entirety and ordered that Jonathan be given to Mr. Bekier for return to Israel.  Jonathan and Mr. Bekier have since returned to Israel.  Thus, Mr. Bekier has achieved the relief he sought in his Hague Convention petition. See Westmoreland v. National Transp. Safety Bd., 833 F.2d 1461, 1463 (11th Cir. 1987) (dismissing appeal as moot when relief initially sought [reinstating plaintiff's pilot certificate] already occurred: "there is no need for the Court to grant that relief.").

Ms. Bekier now appeals, but what relief we can offer her or what "legally cognizable interest [she has] in the outcome [of this appeal]" is not clear. Wakefield v. Church of Scientology of Cal., 938 F.2d 1226, 1229 (11th Cir. 1991) (internal citations omitted).  In her merits brief to this court, Ms. Bekier asks us either to reverse the district court's decision or to remand the case for a further evidentiary hearing based on allegedly newly procured evidence.  But a reversal of the district court's order will provide Ms. Bekier with no actual affirmative relief. Jonathan has already returned to Israel.  See B&B Chem. Co., Inc. v. United States

7

E.P.A., 806 F.2d 987, 989 (11th Cir. 1986) (dismissing challenge to executing warrant as moot because warrant had already been executed). Ms. Bekier's potential remedies now lie in the Israeli courts. Any words by us would be merely advisory.

We suppose that we would have jurisdiction if Jonathan had remained in the United States, either under court order or for other reasons. We have previously recognized that, while a party need not necessarily seek a stay of a lower court's judgment to protect that party's right to appeal, "the consequence of failing to obtain a stay is that the prevailing party may treat the judgment of the district court as final." In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d 1294, 1295 (11th Cir. 1984) (internal citations and quotation omitted). We continued:

> [I]n the absence of a stay, action of a character which cannot be reversed by the court of appeals may be taken in reliance on the lower court's decree. As a result, the court of appeals may become powerless to grant the relief requested by the appellant. Under such circumstances the appeal will be dismissed as moot.

Id. In Sewanee Land, a bankruptcy case, we dismissed the appeal as moot because the debtor had failed to obtain a stay pending appeal and the property in dispute had already been sold to creditors at foreclosure. Id. The court was thus powerless to grant the relief requested by the appellant.

When Jonathan returned to Israel with his father, we became powerless to

grant the relief requested by Ms. Bekier.  And so we must dismiss this appeal.  See

Brown v. Orange County Dep't of Soc. Serv., No. 94-56274 (9th Cir. Aug. 9,

1996) (unpublished) (dismissing as moot appeal under Hague Convention because

child had returned to Austria); Mahmoud v. Mahmoud, No. 96-4165 (E.D.N.Y.

Jan. 24, 1997) (unpublished) (dismissing as moot Hague Convention petition

because child had returned to England); see also Hague Convention, art. 12

("Where the judicial or administrative authority in the requested State has reason to

believe that the child has been taken to another State, it may stay the proceedings

or dismiss the application for the return of the child.").

Ms. Bekier argues that "to dismiss this appeal for mootness defeats the spirit

and the explicit intention of the Hague Convention."[5]  And we understand that our

decision to some degree conflicts with the purposes of the Convention: to prevent

parents from fleeing jurisdictions to find a more favorable judicial forum and to

return children to their habitual residence in a timely fashion.  But the United

_____

[5]Ms. Bekier points to Friedrich v. Friedrich, 78 F.3d 1060 (6th Cir. 1996), where the Sixth
Circuit noted that "staying the return of a child in an action under the [Hague] Convention
should hardly be a matter of course.  The aim of the Convention is to secure prompt return of the
child to the correct jurisdiction, and any unnecessary delay renders the subsequent return more
difficult for the child, and subsequent adjudication more difficult for the foreign court."  Id. at
1063 n.1.  But see Walsh v. Walsh, 221 F.3d 204, 213-14 (1st Cir. 2000) (concluding that
issuance of stay pending appeal of Hague Convention petition was no abuse of discretion).  But
this dicta by the Sixth Circuit does not address the court's jurisdiction or the possibility that the
child's exit from the United States pending appeal, even if the exit is made with the district
court's permission, renders the appeal moot.

9

States Courts are restricted by the jurisdictional doctrine of mootness. Given our duty to respect the limits of our judicial authority, we will not create a "live" case or controversy in an effort to promote the spirit of the convention. See Walsh v. Walsh, 221 F.3d 204, 214 (1st Cir. 2000) ("[N]either the Convention nor the U.S. implementing legislation restricts the appellate process.").

"Where a case becomes moot after the district court enters judgment but before the appellate court has issued a decision, the appellate court must dismiss the appeal, vacate the district court's judgment, and remand with instructions to dismiss as moot." United States v. Ghandtchi, 705 F.2d 1315, 1316 (11th Cir. 1983); see also United States v. Munsingwear, Inc., 71 S. Ct. 104, 107 (1950) ("That procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance."). While some exceptions to this general rule exist, the Supreme Court has noted that "[a] party who seeks review of the merits of an adverse ruling [] ought not in fairness be forced to acquiesce in the judgment . . . when mootness results from unilateral action of the party who prevailed below." U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 115 S. Ct. 386, 391-92 (1994). Mr. Bekier's removal of Jonathan from the United States to Israel caused this appeal to become moot. Thus, because we determine that the case is moot, we must DISMISS this

appeal and instruct the district court to VACATE its order and DISMISS the case.[6]

Appeal DISMISSED.

Case REMANDED for dismissal.

---

[6]We also dismiss as moot all pending motions and related appeals, including appeal no. 99-13944.