BENTON, C.J.
By petition for writ of certiorari, Maria Fernanda Obando Garces sought review of circuit court orders entered August 26 and 29, 2011. The August 29 order superseded the August 26 order. Treating the petition for writ of certiorari as a notice of appeal addressed to the nonfinal order issued August 29, 2011, see Fla. R.App. P. 9.130(a)(3)(C)(iii), we vacate the order under review and dismiss the appeal as moot.
As best we can ascertain from the parties’ pleadings, the parties agree that, in February of 2008, Ms. Obando Garces arrived in Florida, her two minor children in tow. The children’s father, Dino Miguel Zavala Legarda, had consented to the children’s leaving Ecuador for a sixty-day vacation in the United States.[1] Some time after arriving in the United States, Ms. Obando Garces informed Mr. Zavala Le-garda that neither she nor the children planned to return to Ecuador. Thereupon Mr. Zavala Legarda filed an action in Ecuador, asserting the children had been kidnapped and were being illegally detained in the United States.
On May 28, 2009, Mr. Zavala Legarda filed an action in Florida’s Fourth Circuit seeking to domesticate and enforce the Ecuadorian judgment he had obtained, and return of the children to him and to Ecuador. The learned trial judge described the Ecuadorian judgment as “requiring the return of the children to” Ecuador. On July 27, 2009, Mr. Zavala Legarda also filed a petition pursuant to the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11, which implements the Hague Convention on the Civil Aspects of International Child Abduction [Oct. 25, 1980, T.I.A.S. No. 11670,19 I.L.M. 1501] (Hague Convention).
On August 4, 2011, Ms. Obando Garces received notice that Mr. Zavala Legarda would be in Florida and wanted to exercise his right to visitation with the children. On August 17, 2011, Mr. Zavala Legarda’s counsel sent a letter to the trial court, asserting that Ms. Obando Garces refused to permit visitation on reasonable conditions, and requesting an order enforcing Mr. Zavala Legarda’s visitation rights.[2]
*604 After a hearing on August 26, 2011, the trial court entered that day an Order Enforcing Petitioner’s Visitation Rights, ruling that Mr. Zavala Legarda was entitled to immediate physical custody of the children until further order of the court. The trial court also ordered that the children not be removed from the court’s jurisdiction pending further order, and directed the parties to appear before the court on Monday, August 29, 2011, in order for the court to “hear evidence and argument on, and determine, its jurisdiction in this matter and parental time-sharing during its pendency.”
After a hearing on August 29, 2011, the trial court signed that day an Order on Review of Jurisdiction which reads, in substantial part, as follows:
THIS CAUSE came before the Court on August 26, 2011 on a prayer for expedited enforcement of Petitioner’s time-sharing with the parties’ minor children. In consideration of that matter, the Court questioned the extent of its jurisdiction to determine the parties’ interests in and to custody of the children. The Court therefore summoned the parties and counsel to appear on this date to address the issue of jurisdiction. Upon review of the record herein, the stipulations of counsel, and the evidence offered, the Court finds as follows.
[[Image here]]
... Since Respondent and the children came to this country, Petitioner has had no significant contact with the children except by specific and sometimes repeated order of the Court. Since entry of this Court’s order of August 26, 2011, and at all other times he has been permitted to do so, Petitioner has enjoyed appropriate and uneventful time-sharing with the children.
In May 2009, Petitioner filed an action in this Court seeking return of the children to him and to Ecuador, accompanied by a final judgment of an Ecuadorian court requiring the return of the children to that state.[3] His Petition and other pleadings herein raise and give fair notice of his claim for temporary custody of and time-sharing with the said children.
Respondent takes the position that this Court lacks jurisdiction to enforce the order of the Ecuadorian court. It does not appear that any action is pending or was filed by either party seeking to invoke the plenary original jurisdiction of this Court to determine issues of child custody. In effect, [Respondent, appellant here] argues that so long as she has actual custody of the children within the United States, she is- at liberty to retain sole custody of the children without leave of or interference by any court. She has resisted contact between Petitioner and the children, attempting with the assistance of her attorney to impose unilateral conditions on visitation without regard to orders of this Court. It is plain that her purpose is to deny Petitioner his natural and legal rights concerning the children and to enlist the aid of the Court in doing so. She hopes to make him a wraith before the law, dimly glimpsed and faintly heard, but without effect among the living.
No facts have yet been advanced suggesting that Florida is the appropriate place to decide the future of the Ecuado *605 rian children who are the subject of this action. No persuasive argument for the exercise of plenary jurisdiction by this state over such matters has yet been made.
... [A]s noted it appears that plenary jurisdiction of the Florida courts under the UCCJEA [Uniform Child Custody Jurisdiction and Enforcement Act] has not been demonstrated by pleading or by proof....
It is certain that the Court has at a minimum jurisdiction to determine the present actual physical custody of the children[4] In deciding the matter of actual physical custody, the Court notes that Respondent has acted unilaterally within and outside these proceedings to interfere with the children’s contact with Petitioner, and that the record does not establish with certainty any similarly grave misconduct by Petitioner. The evidence is insufficient to decide other factual matters pertinent to temporary custody of or time-sharing with the children, but it is clear that Petitioner is far more likely to allow and to promote a relationship between Respondent and the children than is Respondent to allow and to promote a relationship between them and Petitioner. Furthermore, the evidence demonstrates by at least a preponderance that Respondent has unilaterally removed or detained the children in isolation from Petitioner and outside the reach of a court of competent jurisdiction and is likely to do so in the future.
It is in the best interest of the children that sole custody of and one hundred percent time-sharing with the said children be awarded to Petitioner DINO MIGUEL ZAVALA LEGARDA.
The foregoing is the nonfinal order now before us for review (although Ms. Obando Garces filed an Emergency Motion to Quash the orders entered on August 26 and 29, 2011, and an Emergency Motion for Stay, which were both denied by separate order, entered August 30, 2011).[5]
Any challenge to the August 26 order, which expired by its own terms on August 29, 2011, is moot. Ms. Obando Garces argues that the August 26 order was entered without prior notice to her and in the absence of the lawyer who had represented her theretofore. She acknowledges, however, that she appeared at the hearing represented by substitute counsel. She also asserts the August 26 order improperly transferred physical custody of the children to the father, when only visitation was requested. Although the order directed that Mr. Zavala Legar-da would have “immediate physical custody,” the order also required that the children not be removed from the jurisdiction of the court pending further order and directed the parties to appear before the court again on August 29, 2011. Whatever the merits of these arguments, the August 26 order has no further force or effect. Mr. Zavala Legarda complied fully with the August 26 order, which expired by its own terms, and a superseding order was entered on August 29.
At the time the trial court entered the order under review (and the antecedent August 26 order), both Mr. Zavala *606 Legarda’s petition for domestication and enforcement of the Ecuadorian court order and his Hague Convention petition for return of the children remained pending before the trial court. On August 30, 2011, however, Mr. Zavala Legarda and the children returned to Ecuador, and on September 9, 2011, Mr. Zavala Legarda filed a notice of dismissal in the trial court. At no point in the present proceedings did Ms. Obando Garces seek affirmative relief regarding custody of the children.[6] We conclude therefore that Ms. Obando Garces’s appeal of the August 29, 2011 order is also moot.
The present case closely resembles Bekier v. Bekier, 248 F.3d 1051 (11th Cir. 2001), where a mother and child left Israel and eventually relocated in Florida. The father filed a petition in Florida for return of the child under the Hague Convention. The district court concluded the child had been wrongfully removed from Israel, his habitual residence, and ordered that the father take custody of the child for return to Israel.[7] The father then returned to Israel with the child. Id. at 1052-53. On appeal, the circuit court of appeals explained that the “district court initially had jurisdiction over this dispute because, at the time Mr. Bekier filed his petition, Jonathan was located in the Southern District of Florida. But after the district court ordered the child to be returned to Mr. Bekier, Mr. Bekier returned to Israel with his son.” Id. at 1053-54.
On this basis, the circuit court concluded the case was moot: “Mr. Bekier has achieved the relief he sought in his Hague Convention petition. Ms. Bekier now appeals, but what relief we can offer her or what ‘legally cognizable interest [she has] in the outcome [of this appeal]’ is not clear. In her merits brief to this court, Ms. Bekier asks us either to reverse the district court’s decision or to remand the case for a further evidentiary hearing based on allegedly newly procured evidence. But a reversal of the district court’s order will provide Ms. Bekier with no actual affirmative relief. Jonathan has already returned to Israel. Ms. Bekier’s potential remedies now lie in the Israeli courts. Any words by us would be merely advisory.” Id. at 1054 (citations omitted).[8] See also Church *607 of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (holding that if, during the pen-dency of an appeal, an event occurs “that makes it impossible for the court to grant ‘any effectual relief whatever’ to a prevailing party, the appeal must be dismissed” (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895))).
The August 29 order does not preclude the children’s return to the United States or preclude Ms. Obando Garces’s filing an action regarding their custody or her visitation with the children either in a Florida forum or any other forum. The order does not contain findings that might in any obvious way adversely affect any pending proceeding or any subsequently filed proceedings in any jurisdiction: The trial court did not explicitly rule that any order, judgment or decree of the Ecuadorian court was enforceable in Florida under the UCCJEA,[9] did not rule that Ecuador was the “home state” of the children or determine whether or not the children had become “firmly resettled” in the United States or were the victims of domestic violence, and did not explicitly determine that the children were wrongfully removed from Ecuador or wrongfully retained in the United States. Cf. Leser v. Berridge, 668 F.3d 1202, 1209 (10th Cir.2011) (holding the mother’s appeal was moot when the district court order made no finding of wrongful removal of the children and contained no language preventing the children from returning to the United States).
Despite the nugatory character of the interlocutory order — now that the children’s father has taken a dismissal of the case he originally brought to obtain their custody — we follow accepted practice and vacate the order under review, in order to eliminate any possibility that the order might work to the advantage or disadvantage of the litigants some time in the future. See Arizonans for Official English v. Arizona, 520 U.S. 43, 71-72, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (“Vacatur is in order when mootness occurs through happenstance — circumstances not attributable to the parties — or, relevant here, the ‘unilateral action of the party who prevailed in the lower court.’ ” (quoting U.S. Bancorp Mortg. Co. v. Bonner Mall P’ship, 513 U.S. 18, 23, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994))); United States v. Munsingwear, Inc., 340 U.S. 36, 39 — 40, 71 S.Ct. 104, 95 L.Ed. 36 (1950) (noting that vacatur of an order which has become moot pending a decision on appeal “clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance”).
The order under review is vacated, and the appeal is dismissed.
DAVIS and MARSTILLER, JJ., concur.

. Ms. Obando Garces asserts that Mr. Zavala Legarda’s consent was necessary for her and the younger child to obtain a visa to travel to the United States, but that the older child is a citizen both of Ecuador and of the United States.

. The circuit court docket indicates that several hearings had been noticed in 2009 and *604 2010. The circuit court docket also indicates that a Final Order Directing Return of Child to Country of Habitual Residence was filed on June 18, 2010, subsequently stayed on July 9, 2010, and eventually withdrawn on July 16, 2010. No review of these orders or proceedings is sought here.

. The Ecuadorian judgment is not part of the record before us.

. The trial court also ruled that Mr. Zavala Legarda had the right to remove the children from the United States and return them to Ecuador.

. On August 30, 2011, the trial court entered an order on these motions stating the August 26 and 29 orders "did no more than establish and affirm Petitioner's time-sharing with the parties’ children and allow him to travel with them. This action is set for further hearing on September 9, 2011. The Respondent’s Motion for Stay is DENIED.”

. Nor does she assert that she has filed a separate action seeking a determination regarding custody. The on-line docket of the Duval County Clerk of the Circuit Court reflects that Ms. Obando Garces filed a petition for dissolution of marriage on December 11, 2009 (Case 16-2009-DR-010373-FMXX-MA), but subsequently filed a notice of voluntary dismissal on February 10, 2010. An order closing the file was entered on February 2, 2011. Although a proceeding for divorce is included within the definition of "child custody proceeding” under the Uniform Child Custody Jurisdiction and Enforcement Act, see § 61.503(4), Fla. Stat. (2011), the petition for dissolution was filed in a separate case subsequent to the father’s petition for domestication and enforcement of the Ecuadorian judgment and dismissed prior to the entry of the orders at issue here.

. The district court issued a conditional stay, ordering the child to remain in Florida if the mother filed an appeal within ten days and posted a $100,000 bond. The mother filed a notice of appeal, but failed to post bond. Bekier v. Bekier, 248 F.3d 1051, 1053 (11th Cir.2001).

.But see Whiting v. Krassner, 391 F.3d 540, 546 (3d Cir.2004) (holding the father's appeal was not moot and that reversal could affect the matter, because ordering the return of the child on remand "would essentially be holding that the removal ... was not wrongful under The Hague Convention,” which would have positive implications for the father in later custody proceedings in the United States and result in the order assessing fees and costs against the father being vacated); Fawcett v. McRoberts, 326 F.3d 491, 497 (4th Cir.2003), abrogated on other grounds by Abbott v. Abbott, -U.S.-, 130 S.Ct. 1983, 176 L.Ed.2d 789 (2010) (holding the father’s appeal was not moot because an order from *607 the district court that the mother return to the United States with the child "would permit [the father] to appear in the Scottish courts simply to seek enforcement of the United States judgment, rather than to re-argue the merits of any custody dispute respecting” the child, the mother could comply with the order of her own volition, or the father could seek to enforce such an order if the mother at some point returned to the United States with the child). Compare Leser v. Berridge, 668 F.3d 1202, 1209 (10th Cir.2011) (distinguishing Whiting and Fawcett because, like the circuit court below, the district court "made no finding of wrongful removal”).

. See §§ 61.501 — 61.542, Fla. Stat. (2011).